# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| **BRUCE M. BRADFORD** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 11 C 37** |
| | ) | |
| **VILLAGE OF LOMBARD, POLICE** | ) | **Magistrate Judge Finnegan** |
| **CHIEF RAY BYRNE, individually, and** | ) | |
| **BOARD OF FIRE AND POLICE** | ) | |
| **COMMISSIONERS OF THE VILLAGE OF** | ) | |
| **LOMBARD,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Bruce M. Bradford claims that Defendants the Village of Lombard (the "Village") and Police Chief Ray Byrne ("Chief Byrne"), in his individual capacity, caused his termination as a police officer in retaliation for filing a prior lawsuit for unpaid overtime under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* Currently before the Court are the parties' motions in limine to bar certain evidence from trial. For the reasons set forth here, the motions are granted in part and denied in part.

## DISCUSSION[1]

### A.    Standard of Review

A motion in limine is "any motion, whether made before or during trial, to exclude anticipated prejudicial evidence before the evidence is actually offered." *Luce v. United States*, 469 U.S. 38, 40 n.2 (1984). *See also Mason v. City of Chicago*, 631 F. Supp. 2d

---

[1]    This opinion assumes the reader's familiarity with the facts of this case as set forth in the Court's February 7, 2014 decision, *Bradford v. Village of Lombard*, No. 11 C 37, 2014 WL 497677 (N.D. Ill. Feb. 7, 2014), as amended on August 20, 2014, (Doc. 252), and in its ruling on Defendants' motion in limine to bar evidence of other police misconduct.

1052, 1055 (N.D. Ill. 2009) (citing *Wilson v. Williams*, 182 F.3d 562, 570 (7th Cir. 1999) ("A motion in limine is a request for the court's guidance concerning an evidentiary question."). District courts have broad discretion in ruling on motions in limine, but evidence should not be excluded before trial unless it is clearly inadmissible on all potential grounds. *Betts v. City of Chicago, Ill.*, 784 F. Supp. 2d 1020, 1023 (N.D. Ill. 2011). Otherwise, rulings should be deferred until trial so that questions of foundation, competency, relevancy, and potential prejudice may be resolved in proper context. *Id.* *See also Thomas v. Sheahan*, 514 F. Supp. 2d 1083, 1087 (N.D. Ill. 2007).

"The denial of a motion in limine [to bar evidence] does not mean that the evidence is necessarily admissible, rather, it means only that the party moving in limine has not demonstrated that there is no possible basis for the admission of the evidence." *Austin v. Cook County*, No. 07 C 3184, 2012 WL 1530452, at *1 (N.D. Ill. Apr. 30, 2012). Accordingly, "[t]rial judges may alter prior 'in limine rulings, within the bounds of sound judicial discretion.'" *Kiswani v. Phoenix Sec. Agency, Inc.*, 247 F.R.D. 554, 557 (N.D. Ill. 2008) (quoting *Townsend v. Benya*, 287 F. Supp. 2d 868, 872 (N.D. Ill. 2003)).

## B.     Motions

### 1.     Cross-Motions Related to Board Hearing and Decision

The parties have filed competing motions relating to evidence of the October 23, 2010 administrative hearing before the Board of Fire and Police Commissioners of the Village of Lombard (the "Board") and the Board's subsequent findings and determinations made on December 2, 2010. Plaintiff argues that the jury should not hear any such evidence, describing it as irrelevant because it was "of course not known to Defendant [Byrne] at the time he made the disputed decision" to file charges against

Plaintiff in July 2010. (Doc. 232, at 2). Relying on Federal Rule of Evidence ("FRE") 403, Plaintiff says it would be unfair to require him to "meet Defendants' offensive use of the [Board's] findings with acquiescence," and he proposes a limiting instruction stating that he disputes them. (Doc. 242, at 2-3). He also raises concerns about jury confusion and wasted trial time stemming from his need to present evidence that the Board did not consider that "may have exonerated" him such as "video footage of the parking lot where [Plaintiff] allegedly exited his truck and check [sic] damage to it [and] hand written notes of key interviews that were destroyed, etc.)." Plaintiff would argue that the Board did not consider such evidence because "Defendants did not take logical, reasonable and customary steps to locate and secure such evidence." (Doc. 232, at 4). Further, Plaintiff states that he would offer evidence "showing [during the investigation] repeated failure to follow department general orders, failure to properly interrogate witnesses, prejudging of Bradford's guilt before the investigation even started, and failing to bring Board charges against Officers Rojas, Statkus and Kelly, and Sgt. Abenante, after they committed more serious rule violations than Bradford." (Doc. 232, at 4). Defendants, on the other hand, insist that issue preclusion operates to bar Plaintiff from presenting any evidence that is inconsistent with the Board's factual findings. (Doc. 225).

The Court agrees with Defendants that Plaintiff is essentially "seeking . . . a second chance at re-litigating" facts that have already been decided in this case. (Doc. 236, at 4). It is well-settled that "under Illinois law, 'fact issues finally decided in an administrative proceeding that is judicial in nature precludes litigation of those same fact issues in a subsequent proceeding.'" *Watt v. City of Highland Park*, No. 01 C 6230, 2001 WL 31261216, at *4 (N.D. Ill. Sept. 30, 2002) (quoting *Village of Oak Park v.*

*Illinois Dep't of Employment Security*, 332 Ill. App. 3d 141, 143, 772 N.E.2d 951, 953 (1st Dist. 2002)). Issue preclusion applies when "(1) a material fact issue decided in the earlier adjudication is identical to the one in the current proceeding; (2) there was a final judgment on the merits in the earlier adjudication; and (3) the party against whom estoppel is asserted was a party or was in privity with a party in the earlier adjudication." *Goodwin v. Board of Trustees of Univ. of Ill.*, 442 F.3d 611, 621 (7th Cir. 2006) (citing *Village of Oak Park*, 332 Ill. App. 3d at 143, 772 N.E.2d at 953).

Here, the Board made the following factual findings after hearing sworn testimony from Plaintiff, who was represented by counsel, and eight other witnesses: (1) two independent witnesses with no motive to lie credibly testified that they saw Plaintiff hit and damage the hydrant, immediately pull over and get out of his vehicle to check for damage, and then leave the scene, prompting them to call 911; (2) Plaintiff knew that he had hit the fire hydrant in part because he saw that his car was damaged on the right front passenger side with some red paint transfer from the hydrant and a missing lamp bevel, but he did not report the incident to anyone despite proceeding directly to work at the police station; (3) Plaintiff first admitted he may have hit "something" when he saw Sergeant Marilyn A. Gabinski photographing his vehicle in response to the 911 call; (4) Plaintiff made untruthful statements about the incident to Sgt. Gabinski, Sergeant William Marks, Lieutenant Tom Wirsing and Lieutenant Scott Watkins during informal and formal interrogations, and his testimony at the evidentiary hearing before the Board similarly was not credible; and (5) Plaintiff made those untruthful statements in an attempt to justify his failure to report the accident as required by law, and to deceive LPD officers regarding his knowledge of a property damage

accident and his failure to report it.  This Court affirmed the Board's factual findings after conducting a full administrative review.  *Bradford v. Village of Lombard*, No. 11 C 37, 2014 WL 497677 (N.D. Ill. Feb. 7, 2014), as amended on August 20, 2014, Doc. 252.

Since Plaintiff was a party to the proceedings at all times with ample incentive to litigate the issues, the Board's findings must be given preclusive effect.  *See Goodwin*, 442 F.3d at 621.  Plaintiff does not disagree, as his motion makes no mention of issue preclusion at all.  Instead, he urges the Court to consider cases addressing the admissibility of (1) a labor arbitrator's decision pursuant to a collective bargaining agreement, and (2) reasonable cause determinations from the Equal Employment Opportunity Commission ("EEOC").  (Doc. 232, at 2-4) (citing *Jackson v. Bunge Corp.*, 40 F.3d 239, 246 (7th Cir. 1994) (trial court did not abuse its discretion in excluding arbitrator's decision in part because the arbitrator "candidly admitted" that he had relied on testimony that was arguably inadmissible hearsay); *Tulloss v. Near North Montessori Sch., Inc.*, 776 F.2d 150, 154 (7th Cir. 1985) (quoting *Gillin v. Federal Paper Bd. Co.*, 479 F.2d 97, 99 (2d Cir. 1973)) (EEOC file is a "mish-mash of self-serving and hearsay statements and records; . . . justice requires that the testimony of the witnesses be given in open court, under oath, and subject to cross-examination.")).  The case at bar is wholly distinguishable because as explained, the Board made its findings after hearing sworn testimony from witnesses who were subject to cross-examination, and this Court upheld those findings on administrative review.  Plaintiff's attempt to analogize this case to arbitration decisions and EEOC investigations must be rejected.

Because the Board's findings have preclusive effect here, the jury certainly may hear the findings of the Board in the form of stipulated facts.  This Court is not

persuaded, however, that it is necessary or appropriate for the jury to hear that these facts were "found" by the Board during an administrative hearing, though the jury may surmise this since it will hear that Chief Byrne filed charges with the Board and that the Board ultimately terminated Plaintiff.   What matters for purposes of the trial is that Plaintiff cannot relitigate the findings of the Board, and so these findings must be presented to the jury as stipulated or agreed facts.   Alternatively, if Plaintiff prefers, the Court could instruct the jury that these facts must be accepted as true for purposes of considering Plaintiff's claim and may not be disputed by the parties.   The jury need not hear, however, that the "Board" made these hearings after an administrative hearing or that this Court reviewed and upheld the Board's findings.   At the same time, Plaintiff may not suggest to the jury--through testimony, cross-examination or argument--that these "facts" about the incident are disputed or subject to question (e.g., that he did *not* get out of his vehicle to see the damage or did *not* lie when questioned, or that a more thorough investigation would have exonerated him).   If Plaintiff does so in contravention of the Court's order, then this Court will reconsider whether the jury should be informed of more than the bare findings of the Board in the form of stipulated facts.

Plaintiff says such a restriction is overly broad and should not extend the concept of "same fact issues" to mean "anything 'inconsistent'" with those fact issues.   (Doc. 242, at 2).   According to Plaintiff, even if he cannot challenge the Board's specific findings, he should still be allowed to present evidence that Chief Byrne knowingly pursued charges based on flawed investigation results.   As noted, Plaintiff claims in that regard that Chief Byrne and the other investigating officers repeatedly failed to follow department general orders, interrogated witnesses improperly, and prejudged his guilt.

(Doc. 232, at 4). The problem for Plaintiff is that he had an opportunity to raise all of these arguments during the hearing before the Board but he chose not to do so. As a result, he has waived the right to present those same arguments in this case. In addition, if such evidence were allowed, Defendants would no doubt seek to (and be entitled to) refute Plaintiff's evidence by offering live testimony from all those involved in the investigation and even the witnesses who called 911 to show that the investigation was thorough and not a rush to judgment. Inevitably the focus of the trial would shift and it would resemble the Board hearing itself resulting in great jury confusion and a risk of the jury deciding to reconsider the findings of the Board in violation of the Court's instructions.

To summarize, for the reasons stated above, Plaintiff's motion in limine to bar evidence regarding the administrative hearing and Board decision is granted. The jury will hear only the actual findings in the form of stipulated facts. Plaintiff's request for a limiting instruction stating that he disputes those findings is denied since he is bound by the findings and such an instruction would cause jury confusion. Defendants' motion in limine to bar evidence and testimony that is inconsistent with the affirmed findings of fact issued by the Board is granted. Of course, Plaintiff is free to offer evidence that Chief Byrne treated other similarly situated officers who did not file FLSA claims more favorably.

### 2. Plaintiff's Motion to Bar Evidence Regarding Mitigation and Defendants' Motion to Bar Evidence of Front Pay

The parties next address the admission of evidence relating to Plaintiff's efforts to mitigate his damages and his request for lost future wages and benefits, or "front pay." Plaintiff argues that Defendants should not be allowed to present evidence suggesting

that he failed to mitigate his damages because that is an affirmative defense that must be pleaded or waived, and Defendants did not plead it here. *See Stanley Gudyka Sales Co. v. Lacy Forest Prods. Co.*, No. No. 84 C 5165, 1988 WL 102061, at *1 (N.D. Ill. Sept. 28, 1988) ("Under the established law in this circuit and elsewhere, then, mitigation of damages *is* an affirmative defense that must be pleaded or waived.") (emphasis in original); *Rodriguez v. Texan, Inc.*, No. 01 C 1478, 2002 WL 31061237, at *2 (N.D. Ill. Sept. 16, 2002) (failure to mitigate is an affirmative defense under Rule 8(c) that is waived if not raised in a responsive pleading).

Defendants concede that they "did not expressly plead a failure to mitigate affirmative defense," but insist that they should still be allowed to raise the issue in response to Plaintiff's claim for front pay. (Doc. 236, at 5). In a separate motion, however, Defendants argue that Plaintiff should not be allowed to present any evidence relating to front pay because it is not available as a remedy in this case. In response to an inquiry from the Court, moreover, Defendants newly claim that Plaintiff cannot recover any back pay either. They also state without supporting citation that even though they did not plead failure to mitigate, they should still be able to challenge any back pay award on that basis. (Email from H. Jablecki of 8/19/14, 4:12pm).

### a. Infeasibility of Reinstatement

A threshold issue is whether back pay and front pay are also available where a plaintiff cannot legally be reinstated to his former position. This Court finds that, because it affirmed the Board's decision to terminate Plaintiff, it cannot (and should not) order Plaintiff's reinstatement as a remedy in the event that Plaintiff prevails against Chief Byrne at trial. Defendants do not cite any cases suggesting that reinstatement

has any bearing whatsoever on an employee's entitlement to back pay, which "begins to accrue when the plaintiff first loses wages due to the discrimination [or retaliation] at issue, and [ ] ends on the date of judgment." *Lalowski v. Corinthian Schools, Inc.*, No. 10 C 1928, 2013 WL 1788353, at *2 (N.D. Ill. Apr. 26, 2013) (quoting *Molino v. Bast Servs., Inc.*, No. 08 C 4399, 2011 WL 841891, at *3 (N.D. Ill. Mar. 7, 2011)). Since Defendants have failed to provide any competent authority for their position, the jury will be allowed to award back pay if they find Defendants liable. Defendants may not argue to the jury, and the Court will not instruct the jury, that Plaintiff is ineligible for back pay because he was discharged by the Board.

The same is not true for front pay. Front pay is an equitable remedy that may be awarded when reinstatement is infeasible, such as where "debilitating frictions between the employer and employee can be anticipated," *Avitia v. Metropolitan Club of Chicago, Inc.*, 49 F.3d 1219, 1231 (7th Cir. 1995), or where there is a "lack of an available position to which to reinstate the plaintiff." *Downes v. Volkswagen of Am., Inc.*, 41 F.3d 1132, 1141 (7th Cir. 1994). Front pay is designed to put the plaintiff "in the identical financial position that he would have occupied had he been reinstated," *Avitia*, 49 F.3d at 1231, but is "'not intended to assure a plaintiff's future financial success' and should extend only to the date upon which 'the sting' of discriminatory conduct has ended." *U.S.E.E.O.C. v. Custom Companies, Inc.*, Nos. 02 C 3768, 03 C 2293, 2007 WL 734395, at *17 (N.D. Ill. Mar. 8, 2007).

Defendants claim that reinstatement is not merely "infeasible" in this case but is legally precluded outright given that this Court upheld the Board's termination decision. No court, they say, has ever found that "'front pay' [is] available to an employee whose

termination by an independent third party tribunal has been upheld and thus has no legal right to reinstatement." (Doc. 226, at 3). Defendants support this position by citing to *Breneisen v. Motorola, Inc.*, No. 02 C 50509, 2009 WL 1759575 (N.D. Ill. June 22, 2009), where the court observed that "[w]ithout the option of reinstatement, awarding front pay is unavailable because it does not serve the purpose of the statute or save social costs." *Id.* at *8 (citing *Avitia*, 49 F.3d at 1232). There, the court employed a "three step sequential analysis" and explained that all of the questions "must be answered in the affirmative for front pay to be awarded: (1) Does the plaintiff qualify for reinstatement under the facts and circumstances of the case; (2) If the plaintiff qualifies for reinstatement, is reinstatement infeasible; and (3) If reinstatement is infeasible, is front pay the appropriate substitution?" *Id.* Defendants claim the first question must be answered "no" because Plaintiff was properly discharged for cause following a hearing and appropriate judicial review. (Doc. 226, at 3).

It is true that Plaintiff cannot be reinstated due to the Board's decision, but if Chief Byrne had not filed charges against him, Plaintiff never would have been brought before the Board in the first place or lost his job as a result of the fire hydrant incident. If Chief Byrne filed those charges for retaliatory reasons, then this Court may exercise its discretionary authority to award some amount of front pay even though reinstatement is not legally an option. Defendants' motion in limine to preclude all evidence of front pay is therefore denied.

### b. Mitigation Evidence

Turning to the question of mitigation, Plaintiff is correct that "[g]enerally, failure to plead a defense results in its waiver." *Kakkanathu v. Rohn Indus., Inc.*, No. 05-1337,

2008 WL 4330144, at *1 (C.D. Ill. Sept. 17, 2008) (citing *Pinto Trucking Serv., Inc. v. Motor Dispatch, Inc.*, 649 F.2d 530, 534 (7th Cir. 1981)). That said, "the Seventh Circuit [has] also stated that 'delay in asserting an affirmative defense waives the defense only if the plaintiff was harmed as a result.'" *Id.* at *2 (quoting *Curtis v. Timberlake*, 436 F.3d 709, 711 (7th Cir. 2005)). As the court explained in *Williams v. Lampe*, 399 F.3d 867 (7th Cir. 2005), "where the plaintiff has an opportunity to respond to a late affirmative defense, he cannot establish prejudice merely by showing that the case has progressed significantly since the defendants answered his complaint." *Id.* at 871.

Here, Defendants' damages expert, Mary O'Connor, made it clear in her March 8, 2013 report that she considered "Mitigation Wages/Benefits" in calculating Plaintiff's potential back pay and future losses, including "Expected Mitigation Wages and Benefits – Civil Engineer" and "Expected Mitigation Wages and Benefits – Teacher." (Doc. 232-1, at 2, 4, 6). Plaintiff received the report on March 8, 2013 and was given until April 8, 2013 to depose Ms. O'Connor, though he chose not to do so. (Doc. 139). In other words, Plaintiff has known for well over a year that Defendants intended to raise the mitigation issue at trial, and had an opportunity to test that theory during Ms. O'Connor's deposition. *Compare Castro v. Chicago Housing Authority*, 360 F.3d 721, 735 (7th Cir. 2004) (quoting *Venters v. City of Delphi*, 123 F.3d 956, 969 (7th Cir. 1997)) ("[W]e must not countenance attempts to invoke [affirmative] defenses at the eleventh hour, without excuse and without adequate notice to the plaintiff."). Plaintiff does not articulate any specific prejudice he has suffered as a result of Defendants' failure to plead their affirmative defense  and his motion to bar such evidence on this basis is denied.

In addition to offering evidence and argument asking the jury to reduce any back pay award due to Plaintiff's failure to mitigate damages, Defendants may also offer such evidence to assist the Court in assessing Plaintiff's claim for front pay. Indeed, the Court is permitted to, and likely will submit the front pay issue to the jury for advice. *See Downes*, 41 F.3d at 1142 ("[t]he court may submit the [front pay] issue to the jury for advice, but it is not bound by the jury's advisory verdict.").

### c. "Comparable" Employment

In a final challenge to the proffered mitigation evidence, Plaintiff argues that Defendants should not be allowed to mention his engineering degree or his stated plans to obtain a Master's Degree in education because working as an engineer or teacher is not "comparable" to working as a police officer. This argument is premised on the report from Defendants' expert, Ms. O'Connor, in which she states that since Plaintiff "is able by education and training to pursue several careers other than law enforcement," including civil engineering and teaching, the "[w]ages and benefits from these careers over his working life should be deducted from expected wages and benefits from his position as a patrol officer with the Village of Lombard to arrive at the accurate estimate of damages in this matter." (O'Connor Opinion, Doc. 232-1, at 2, 4, 6).

It is well-established that "[a]n employee 'need not seek employment which is not consonant with his particular skills, background, and experience or which involves conditions that are substantially more onerous than his previous position.'" *Graefenhain v. Pabst Brewing Co.*, 870 F.2d 1198, 1202 (7th Cir. 1989) (quoting *Ford Motor Co. v. E.E.O.C.*, 458 U.S. 219, 231 n.16 (1982)). "A substantially equivalent position is one which affords 'the claimant virtually identical promotional opportunities, compensation,

job responsibilities, working conditions, and status.'" *Meyer v. United Air Lines, Inc.*, 950 F. Supp. 874, 876 (N.D. Ill. 1997) (quoting *Rasimas v. Michigan Dep't of Mental Health*, 714 F.2d 614, 624 (6th Cir. 1983) (quoted in *Graefenhain*)).

Plaintiff objects that Ms. O'Connor has "with zero expert training, education or experience, speculated that Bradford could work as a civil engineer and/or a teacher," which are "non-comparable careers." (Doc. 232, at 7). He thus seeks to bar her opinion pursuant to FRE 702 and 703 as "unfounded guesswork." (*Id.*). Plaintiff fails to provide any analysis whatsoever regarding the standards for raising such a *Daubert*[2] challenge, but the objection is moot in any event because Defendants informed the Court during the Final Pretrial Conference on August 28, 2014 that they do not intend to call Ms. O'Connor as a witness at trial.

Regardless, Defendants may question Plaintiff about the civil engineering degree he currently holds (Plaintiff apparently testified at his deposition that he actually performed a few years of engineering work prior to becoming a police officer), and any steps he took towards obtaining a Master's Degree in teaching. (Doc. 236, at 5; Bradford Dep., at 10-12, 22). Plaintiff disputes that engineering and teaching work are comparable to law enforcement work, but that is a question of fact for the jury. *See Smith v. Great American Restaurants, Inc.*, 969 F.2d 430, 439 (7th Cir. 1992) ("[T]he issue of reasonable mitigation is ultimately a question of fact for the jury."); *Yee v. UBS O'Connor, LLC*, No. 07 C 7150, 2010 WL 1640192, at *26 (N.D. Ill. Apr. 22, 2010)

---

[2] The purpose of the *Daubert* inquiry is to scrutinize proposed expert witness testimony to determine if it has 'the same level of intellectual rigor that characterizes the practice of an expert in the relevant field' so as to be deemed reliable enough to present to a jury." *Lapsley v. Xtek, Inc.*, 689 F.3d 802, 805 (7th Cir. 2012) (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999)). *See also Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 596 (1993).

(finding "genuine disputes of material fact on the question of whether an offer, if made by SBH, was for employment comparable to the position held by Mr. Yee at UBS.").

In sum, Plaintiff's motion in limine to bar evidence at trial of his failure to mitigate damages, and Defendants' motion in limine to bar any evidence of front pay are both denied.

### 3.    Plaintiff's Motion to Exclude Evidence of Collateral Source Income

Plaintiff seeks to exclude evidence that he applied for and received unemployment compensation and state Medicare benefits.   (Doc. 232, at 9). Defendants represent that they "do not intend to introduce such evidence, and therefore do not object to the exclusion of the evidence at trial."   (Doc. 236, at 5).   Plaintiff's motion in limine as to collateral source income is therefore granted.

### 4.    Plaintiff's Motion to Bar Evidence Regarding His Disciplinary History

Plaintiff finally moves to preclude Defendants from introducing evidence regarding any alleged job performance and/or misconduct issues aside from the fire hydrant incident.   (Doc. 232, at 10).   Defendants respond that they will only seek to introduce such other evidence if Plaintiff attempts to "portray himself as a model police officer that never had any issues before he filed the FLSA claim."   (Doc. 236, at 6). They also want to be able to impeach Plaintiff with bad performance or misconduct issues if he offers evidence of his good performance.   (Email from H. Jablecki of 8/21/14, 11:05am).   Plaintiff represents that he "does not intend to portray himself as a 'model officer,'" and further "agrees to limit any evidence of his job performance to the ratings he received on each of his annual performance reviews.   (See uncontested/ unobjected fact #4: 'Bradford received an overall rating of either 'meets' or 'exceeds' on

each of his annual performance reviews.'" (Email from T. Coffey of 8/21/04, 12:09pm).

The Court reserves ruling on this motion until it receives more detailed information concerning the specific evidence that Plaintiff will offer and how he intends to use it at trial. The Court will then reexamine the Board's findings (particularly paragraphs 17 and 18) to ensure that Plaintiff is not attempting to relitigate an issue already decided by the Board and that the evidence is relevant. In no event will the Court allow testimony of Sgt. Marks and Lt. Abenante that, other than the hydrant incident, they did not know of any instances where [Plaintiff] was alleged to have been dishonest." (*Id.*)

### 5. Defendants' Motion to Bar Evidence of Plaintiff's Criminal Investigation, Trial and Acquittal in State Court

As a result of the March 20, 2010 incident with the fire hydrant, Plaintiff was charged with the state criminal offenses of damage to Village property and leaving the scene of a hit-and-run accident. He was subsequently acquitted on all counts following a trial. Defendants now seek to bar Plaintiff from presenting evidence of the criminal investigation, trial and acquittal, arguing that it has no relevance, would be more prejudicial than probative, and constitutes inadmissible hearsay in any event. (Doc. 227). Plaintiff claims that since the jury will hear evidence of the Board's factual findings, they should likewise hear that he was acquitted of criminal wrongdoing. (Doc. 241, at 1-2). Plaintiff also proposes a limiting instruction notifying the jury that the acquittal:

> does not establish that Defendants' action[s] in terminating his employment were unlawful and not justified, and you may not consider the acquittal for those purposes. Rather, the acquittal establishes that the state did not meet its burden of proof in Plaintiff's criminal case beyond a

> reasonable doubt and therefore, that Plaintiff was not convicted of those
> charges.

(*Id.* at 3).

The Court agrees with Defendants that evidence relating to the criminal charges and acquittal is irrelevant. Though the Board found that Plaintiff "failed to enforce and uphold the law by failing to report the accident as required by the Illinois Vehicle Code," (Doc. 27-1, at 4), there is no indication or suggestion that he was ever referred for criminal prosecution, and all of the Board charges against him concern LPD General Orders. (*Id.* at 5). Absent any evidence of a criminal prosecution, there is no reason to think the jury would speculate that one occurred or wonder about the results. Plaintiff's proposed limiting instruction arguably addresses the concern that the jury may conclude the acquittal undermines the Board's decision. Since none of that acquittal evidence is relevant, however, the better course is to bar reference to it altogether. *See United States v. Jones*, 808 F.2d 561, 566-67 (7th Cir. 1986) (upholding district court's decision to exclude acquittal evidence because it did "not prove innocence" and "the potential for prejudice was obviously substantial."). Defendants' motion in limine on this issue is granted.

### 6. Defendants' Motion to Exclude Evidence of Draft Canine Sale Agreement

Defendants next argue that Plaintiff should not be allowed to introduce evidence relating to a draft sale agreement proposing that he purchase a Village-owned police canine for a nominal sum upon its retirement in exchange for waiving his right to pursue an FLSA action against the Village relating to his duties as a canine officer. The relevant facts are as follows.

In 2004, Plaintiff became a canine officer and kept his police dog, Doc, at home when he was not working. Plaintiff says that in June and July 2009, he spoke to his supervisors about amounts he thought he was owed for time he spent caring for and training Doc while he was off duty. At some point thereafter, Plaintiff learned that the LPD was retiring Doc from service and that he would no longer be a canine handler. (Doc. 249, at 1). Plaintiff plans to testify that he had several discussions with Chief Byrne about his desire to transfer ownership of Doc from the LPD to him and his family, who had cared for Doc outside the work setting for nearly five years. (*Id.* at 1-2). On July 13, 2009, Chief Byrne, who is apparently an attorney, called Plaintiff into his office and presented him with a transfer of ownership agreement, which Chief Byrne signed and handed to Plaintiff, instructing him to hurry up and sign it as soon as possible. Plaintiff had his attorney review the agreement and the attorney advised that he could sign it as long as he crossed out paragraph 6, which purported to have him waive his FLSA rights. (*Id.* at 2; Doc. 249-2, ¶ 6). As the lawyer explained, it was unlawful to waive the FLSA claim.

On July 23, 2009, Plaintiff gave Chief Byrne a copy of a memo prepared by his attorney along with the signed agreement with paragraph 6 crossed out and initialed. Plaintiff also filed a union grievance that day objecting to the requirement that he waive his FLSA rights in order to gain possession of Doc. (*Id.* at 2-3). Five days later, on July 28, 2009, Chief Byrne presented Plaintiff with a revised transfer of ownership agreement that no longer included a waiver of FLSA rights, (Doc. 249-5, ¶ 6), but Plaintiff declined to sign until his attorney had reviewed it. Chief Byrne then informed Plaintiff that Doc was Village property and ordered him to take Doc to the Lombard

17

Veterinary Hospital for boarding. (Doc. 249, at 3). Plaintiff complied, and the next day he signed the revised agreement "out of desperation and fear for Doc's well-being." (*Id.*). The following month on August 5, 2009, Plaintiff filed his FLSA lawsuit.

Defendants claim that evidence relating to the draft transfer of ownership agreement is irrelevant because it was unenforceable as a matter of law. (Doc. 228, at 3) (citing *Hohnke v. United States*, 69 Fed. Cl. 170, 173 (Fed. Cl. 2005)) (holding that "FLSA claims cannot be waived prospectively."). Plaintiff responds that the course of events surrounding his entering into the agreement is relevant to demonstrate Chief Byrne's "retaliatory animus and state of mind toward [him] due to [his] desire to seek legal advice before agreeing to waive his FLSA rights and desire to preserve his FLSA rights to seek compensation for the time he spent caring for Doc." (Doc. 249, at 3).

The Court finds that it would be unduly prejudicial and of little probative value to inform the jury that the agreement was illegal and that Chief Byrne is an attorney. To the extent that Plaintiff has an admission from Chief Byrne that he knew the agreement was illegal when he requested Plaintiff to sign it, the Court will reconsider this ruling. With these exceptions, however, the evidence is relevant to Chief Byrne's state of mind regarding Plaintiff's desire to pursue his rights under the FLSA, which in turn may have impacted Chief Byrne's decision to file charges against him with the Board in response to the March 2010 fire hydrant incident. Defendants' motion in limine to bar evidence of the draft transfer of ownership agreement is denied as set forth in this opinion. This of course assumes that the evidence is not barred on hearsay, foundation or other evidentiary grounds.

**7.      Defendants' Motion to Bar Evidence of Plaintiff's Financial Condition**

In their next motion, Defendants seek to bar Plaintiff from presenting any evidence relating to his financial condition, including his filing for bankruptcy.   This argument is premised on Defendants' belief that the FLSA does not permit a plaintiff to recover compensatory damages for emotional pain and suffering, or punitive damages. To be sure, some courts have adopted that point of view.  S*ee, e.g., Douglas v. Mission Chevrolet*, 757 F. Supp. 2d 637, 640 (W.D. Tex. 2010) ("[P]unitive damages are not recoverable in an anti-retaliation claim brought under the FLSA."); *E.E.O.C. v. Local 350, Plumbers and Pipefitters*, 842 F. Supp. 417, 422 (D. Nev. 1994) ("The FLSA does not allow other compensator[y] damages such as relief for pain and suffering or punitive damages.").

The problem for Defendants is that ever since Congress amended the statute's remedial section in 1977 to authorize "legal" relief, the Seventh Circuit has interpreted the term to include both compensatory and punitive damages.   *Travis v. Gary Community Mental Health Ctr., Inc.*, 921 F.2d 108, 111-12 (7th Cir. 1990) ("Compensation for emotional distress, and punitive damages, are appropriate for intentional torts such as retaliatory discharge."); *Avitia*, 49 F.3d at 1229-30 (the FLSA allows a plaintiff to "recover damages for the full consequences of the discharge including – we have held specifically – emotional distress.").   The only contrary cases Defendants cite from this circuit are easily distinguishable.   *Pfeiffer v. Essex Wire Corp.*, 682 F.2d 684, 686 (7th Cir. 1982) (no punitive damages available under the Age Discrimination in Employment Act); *Van Bumble v. Wal-Mart Stores, Inc.*, 407 F.3d 823,

826 (7th Cir. 2005) (in slip and fall negligence suit, district court properly precluded the plaintiffs from testifying about their lack of medical insurance and financial situation).

As for Defendants' concerns about undue juror sympathy and confusion if they hear about Plaintiff's bankruptcy proceedings and other financial problems, the Court concludes that the probative value outweighs any such risks, particularly since the jury need not hear details about the bankruptcy proceedings themselves. *See, e.g., Kasper v. Saint Mary of Nazareth Hosp.*, 135 F.3d 1170, 1174 (7th Cir. 1998) (in workers' compensation retaliation case, evidence that the plaintiff's job loss precipitated his declaration of bankruptcy was "germane to [his] claim that he suffered emotional distress as a consequence of being fired, a proper item of damages in a retaliation case under Illinois law."). Of course, Defendants will be permitted to cross-examine Plaintiff regarding his financial condition and the measures he took to earn money in order to avoid bankruptcy. Defendants' motion in limine to bar evidence of Plaintiff's financial situation is denied.

### 8. Defendants' Motion to Exclude Evidence of Retaliation Other than Chief Byrne Filing Charges Against Plaintiff

Defendants finally seek to exclude evidence or argument regarding any alleged adverse employment action Plaintiff may claim to have suffered except for Chief Byrne's filing of charges against him with the Board. Plaintiff says such a motion is unnecessary because "[t]he jury will be told exactly what action [he] contends to have violated the FLSA: Defendants retaliatory filing and pursuit of Board charges . . . nothing more and nothing less." (Doc. 245, at 1). At the same time, Plaintiff argues once again that he should be able to present "contextual" evidence that the officers involved in the investigation of the fire hydrant incident "failed to follow a number of standard

investigatory procedures and/or LPD general orders," (Doc. 245, at 2), and failed to present relevant evidence during the Board hearing. (Email of 8/19/14 from H. Jablecki, 4:36pm). As explained earlier, however, Plaintiff waived any such arguments by failing to raise them before the Board.

Plaintiff also suggests that Chief Byrne engaged in other retaliatory conduct besides filing the charges that are "relevant to show Defendant Byrne's retaliatory motivation." (*Id.*). For example, Plaintiff wants to tell the jury that Chief Byrne exhibited animosity towards him when he raised FLSA overtime concerns relating to the care of police dog, Doc. He also wants to introduce evidence that Defendants argued unsuccessfully in this case that he waived his right to bring this retaliation claim by settling the underlying FLSA lawsuit. (Email from T. Coffey of 8/19/14, 4:36pm). Plaintiff says this evidence will rebut Defendants' evidence that in September 2010, after Plaintiff had been suspended without pay, Chief Byrne successfully interceded with the Fraternal Order of Police on Plaintiff's behalf to have a 20 hour per week limit on outside employment lifted. Defendants, however, do not anticipate presenting that evidence except as necessary for rebuttal purposes. (Email from A. Wall of 8/19/14, 12:54pm).

As discussed earlier, Plaintiff may present evidence regarding Chief Byrne's actions and state of mind in dealing with the transfer of Doc's ownership after Plaintiff raised the overtime pay issue. Plaintiff may also offer evidence that Chief Byrne treated similarly situated officers who did not file FLSA claims more favorably than him. Otherwise, Defendants' motion is granted. Plaintiff may not argue retaliatory motive on the part of Chief Byrne based on Village counsel's legal argument in this lawsuit that

Plaintiff waived his right to pursue an FLSA retaliation claim by settling the underlying FLSA case. Defendants' legal strategy employed in this case has no relevance to Chief Byrne's state of mind in filing charges against Plaintiff with the Board, and would be unduly prejudicial and confusing under FRE 403.

## CONCLUSION

For the reasons stated above, Plaintiff's Motions in Limine [Doc. 232] are granted in part and denied in part. Except as otherwise stated in this opinion, Defendant's Motions in Limine set forth in Docs. 225, 227 and 230 are granted, and the Motions in Limine set forth in Docs. 226, 228, and 229 are denied.

ENTER:

Dated: August 29, 2014

_____
SHEILA FINNEGAN
United States Magistrate Judge